# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

IN & OUT WELDERS, INC.                                    CIVIL ACTION

VERSUS

                                                         NO. 16-86-JWD-RLB

H & E EQUIPMENT SERVICES, INC.,
ET AL.

## ORDER

Before the Court is Plaintiff's Motion to Compel (R. Doc. 82) filed on January 11, 2018. The motion is opposed. (R. Doc. 84).

The Court held oral argument on April 18, 2018. (R. Doc. 96). The Court allowed the parties to file supplemental briefs not to exceed five pages, without further leave of court, identifying any relevant deposition testimony not discussed with the parties' initial briefs. (R. Doc. 96 at 2).

Defendants filed a supplemental brief. (R. Doc. 97). Plaintiff filed a supplemental brief exceeding the five page limit (R. Doc. 98) and subsequently filed a motion seeking to exceed the page limits and to strike the non-compliant supplemental brief. (R. Doc. 100). The motion is opposed. (R. Doc. 101).

The Court has considered all of the briefing submitted by the parties, as well as oral argument by counsel, in resolving Plaintiff's Motion to Compel.

## I.    Background

On October 5, 2015, In & Out Welders, Inc. ("Plaintiff" or "In & Out") brought this class action lawsuit against H&E Equipment Services, Inc. and H&E Equipment Exchange, LLC (collectively, "Defendants" or "H&E") claiming that certain Loss Damage Waivers and Environmental Charges contained in the Defendants' equipment rental contracts constitute a

breach of contract, violate the duty of good faith and fair dealing, and violate Florida's Deceptive and Unfair Trade Practices Act. Fla. Stat. § 501.201, *et seq.* ("FDUTPA") and Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.50 ("TDTPA"). (R. Doc. 1 at 3). Plaintiff alleges that the Loss Damage Waivers (sometimes referred to as "LDW" by the parties) and Environmental Charges are included on pre-printed contracts, and that Defendants misrepresent the nature and purpose of these fees, which Plaintiff asserts solely included to raise profits. (R. Doc. 1 at 2-3, 10-11).

The parties are currently engaged in discovery regarding class certification issues. (R. Doc. 60; R. Doc. 83).

On July 6, 2017, Plaintiff propounded its First Requests for Production on Defendants. (R. Doc. 82-2). Defendants provided responses on August 8, 2017. (R. Doc. 82-3). Defendants provided supplemental responses on September 12, 2017. (R. Doc. 82-4).

On November 10, 2017, Plaintiff's counsel sent an email to defense counsel proposing certain search terms to obtain responsive documents and raising certain issues with Defendants' supplemental responses. (R. Doc. 82-6 at 4-6). Defense counsel provided a response letter on November 10, 2017. (R. Doc. 82-5). Plaintiff's counsel sent an additional e-mail raising issues with regard to Defendants' supplemental responses, and Defendants agreed that the parties reached an impasse on the identified issues. (R. Doc. 82-6 at 1-2). Plaintiff represents that the parties held a discovery conference on January 10, 2018 but were unable to resolve the issues identified in the motion. (R. Doc. 82-1 at 13).

Plaintiff now seeks an order requiring Defendants to provide supplemental responses to Requests for Production Nos. 1, 2, 3, 4, 7, 8, 9, 10, 13, 14, 15, 17, 19, 20, 21, and 23. (R. Doc. 82). Plaintiff argues that Defendants' objections based on relevance, overbreadth, speculation,

and lack of control are meritless, and to the extent Defendants have raised privilege objections, they have not provided a privilege log in accordance with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure. (R. Doc. 82-1 at 3-4). In opposition, Defendants argue that they have already produced nearly 70,000 pages of documents and over one gigabyte of native documents, that many of the documents sought by Plaintiff do not exist, and that compiling other documents requested by Plaintiff would be unduly burdensome or impossible. (R. Doc. 84).

In a separate filing, Plaintiff represents that Defendants produced a 22-page privilege log on February 23, 2018 identifying hundreds of documents withheld as privileged. (R. Doc. 86 at 2).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 34 provides a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Analysis

#### 1. Request for Production No. 1

Plaintiff's Request for Production No. 1 seeks production of "all documents relating to Plaintiff, including, but not limited to invoices, contracts, and screen shots from any billing or customer information storage system." (R. Doc. 82-2 at 3). Subject to certain objections, Defendants produced "copies of invoices and contracts pertaining to Plaintiff, copies of correspondence between H&E and Plaintiff, and other documents pertaining to In & Out identified after a reasonable search." (R. Doc. 82-3 at 3). In their supplemental response,

Defendants asserted that they would not produce "screen shots from its billing or customer information storage system" because such production would be unduly burdensome and would not result in the production of relevant information not available through other sources. (R. Doc. 82-4 at 4).

Plaintiff seeks production of the requested screenshots, arguing that they "are relevant because they show the categories of information that H&E maintains on In & Out which will be used to show at class certification that H&E treats all its customers in a common and typical way with respect to the issues in this case." (R. Doc. 82-1 at 4). Defendants argue that the production of such screenshots would be unduly burdensome, as it would require Defendants to print each available window in two different software systems and manually produce hundreds of screenshots. (R. Doc. 84 at 2). Defendants further argue that the production of screenshots will not result in the production of additional relevant information given that they have already produced data regarding Plaintiff's dealings with Defendants, and Plaintiff has noticed a Rule 30(b)(6) deposition on "the operation information, setup and functionality" of Defendants' computer systems.

In its supplemental brief, Plaintiff argues that despite having conducted the foregoing Rule 30(b)(6) deposition after the filing of its Motion to Compel, it has not obtained information from Defendants' "Rental Result" and "SAP" programs "produced in a manner that would allow it to determine what type of information is stored and how it is stored." (R. Doc. 98 at 2). Plaintiff identifies two other computer systems—NDS and Rental Operations Center—but does not argue that information from these systems would be responsive to the document request. (R. Doc. 98 at 2).

In their supplemental brief, Defendants argue that the Rule 30(b)(6) deposition testimony identifies "the types of information accessible through Rental Result," and that the deposition testimony, along with the previous production of a spreadsheet and training manuals, sufficiently respond to the document request. (R. Doc. 97 at 1-2).

There is no dispute that the electronically stored information sought in the form of screenshots is obtainable pursuant to Rule 34(a)(1)(A). Furthermore, Defendants do not dispute that the information sought is relevant. Defendants have not demonstrated that the discovery sought is not proportional to the needs of the case or that the production of the screen shots would cause their undue burden. Given Defendants' resources and the amount at issue, manually printing or capturing "hundreds" of pages of screenshots is not unduly burdensome. Accordingly, the Court will grant the relief requested.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED** with respect to Request for Production No. 1. Defendants must provide the requested screen shots within **14 days** of the date of this Order.

### 2.      Request for Production No. 2

Plaintiff's Request for Production No. 2 seeks production of "all customer data for customers who have paid or been charged a Fee,[1] including each customer's full name and last known address, and the amount and date of each Fee paid." (R. Doc. 82-2 at 3). Subject to certain objections, Defendants stated they would "produce documents reflecting customers, by customer number only, who have been charged LDW and Environmental Charges during the period from 2009 through 2016." (R. Doc. 82-3 at 4).

---

[1] Plaintiff defines "Fees" as "Loss Damage Waivers" and "Environmental Charges." (R. Doc. 82-2 at 3).

Acknowledging that Defendants have produced certain information in a spreadsheet reflecting those customers that have been charged fees, Plaintiff now seeks an order directing Defendants to produce the documents that show which putative class members paid specific Fees. (R. Doc. 82-1 at 5-6). In opposition, Defendants explain that they do not have documents responsive to this request because their general ledger entries for the Fees, and all other charges, are only made at the time the item is billed, not at the time it is paid. (R. Doc. 84 at 3). Defendants represent that they have produced financial records reflecting when Fees were charged to customers, but do not have responsive documents allocating payments to the particular line-item charges of Fees. (R. Doc. 84 at 3-4).

In its supplemental brief, Plaintiff argues that it is not seeking an order requiring Defendants to run any reports, and is instead seeking the production of underlying data showing "payments, payment dates, credits, and write-offs" that Defendants' deposition testimony indicates exists. (R. Doc. 98 at 2-3). In their supplemental brief, Defendants reference certain deposition testimony, indicating that while they could easily run reports saying whether a particular invoice is open or not, it would take individualized inquiry into the SAP program to determine whether an invoice was paid in full or whether an amount was written off. (R. Doc. 97 at 2-3).

Defendants' Corporate Credit Manager stated that "It's pretty easy to run a report that says it is open or not open. How it became not open is not necessarily easy to go to in SAP." (R. Doc. 97 at 2). The Controller further explained that the accounts receivable detailed in SAP would still not reflect whether an invoice was closed because it was written off or paid. "You'd have to go research each particular transaction." (R. Doc. 97 at 2).

In the initial opposition memo, Defendants discussed the possibility of creating reports using SAP to create a list of invoices including LDW or Environmental Charges, with additional data indicating the status of that invoice. (R. Doc. 84 at 4). It is apparent that such a record does not exist at this time. Even then, the Court is satisfied that based on the representations of the parties and the deposition testimony above, even that report would not provide the "amount and date of each Fee paid" as demanded in Request for Production No. 2.

Defendants have reasonably complied with Request for Production No. 2 as written. Defendants have also explained the limitations based on how the accounting records are compiled and maintained, and have diligently responded with the records available. Review of transaction details numbering in what could be hundreds of thousands is not reasonable. This is a situation where the Court would expect the parties to find some area of compromise based on the records as they exist.[2] Instead, Plaintiff seeks this Court to compel the Defendants to produce records that do not exist, potentially create reports that would still fall short of the demand in Request for Production No. 2, or review documentation for every transaction in the entire geographic area and duration covered by the Complaint. The Court determines that none of these are appropriate under the applicable Federal Rules of Civil Procedure.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 2.

### 3.      Request for Production No. 3

Plaintiff's Request for Production No. 3 seeks production of "all written agreements between members of the putative classes and Defendants." (R. Doc. 82-2 at 4). Defendants

---

[2] The Court is ordering, below, that Defendants produce monthly financial statements reflecting revenue and expenses attributable to LDW and Environmental Charges, providing further information about how these fees were accounted.

raised various objections in their initial response without producing any documents. (R. Doc. 82-3 at 4). In their supplemental response, Defendants stated that rental contracts are created in a computer system called "ROC/RentalResult" based on the rental terms input at a particular branch, and that it is Defendants practice to print the contract on pre-printed contract forms setting forth their standard Terms & Conditions, which were previously produced. (R. Doc. 82-4 at 4). Defendants further stated that subject to a protective order, they would produce electronic files of the rental contract terms maintained in ROC/RentalResult for Alabama, Texas, and Florida during the period 2010-2016. (R. Doc. 82-4 at 4-5).

Plaintiff argues that in response to this request, Defendants have only produced a database containing references to particular invoice/contract numbers but not the actual contract terms sought. (R. Doc. 82-1 at 6). In opposition, Defendants argue that production of the actual contracts would be unduly burdensome because in 2015 alone, Defendants entered into 42,112 separate rental contracts in Florida, Alabama, and Texas, and those rental contracts are maintained in hard copy format at twenty-two branch offices. (R. Doc. 84 at 4-5). Defendants represent that they produced each version of the standard Terms and Conditions printed on the back side of the contracts used during the proposed class period, further stating, however, that there were "at least seven versions" of those Terms and Conditions. (R. Doc. 84 at 5).

The Court agrees with Defendants that retrieving and producing what might amount to over 40,000 individual contracts for each of the seven years of the proposed class period in hard copy at 22 different branch offices would be unduly burdensome and disproportionate to the needs of this case at the class certification stage. Furthermore, in its supplemental brief, Plaintiff stated it was "willing to table this issue because it believes that testimony obtained after the filing of [Plaintiff's Motion to Compel] may provide sufficient information for class certification,"

reserving its right to seek the information during merits discovery. (R. Doc. 98 at 4).  The Court

also notes that, as set forth below, the various form contracts used during the applicable periods

have been produced.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request

for Production No. 3.

### 4.    Request for Production No. 4

Plaintiff's Request for Production No. 4 seeks production of "blank, exemplar forms of

all documents that have been used in transactions with members of the putative classes,

including invoices and contracts." (R. Doc.  82-2 at 4).  Subject to certain objections, Defendants

agreed to produce copies of the following exemplar forms: "Credit Application, Terms and

Conditions, Insurance Request Form, and Claim Form." (R. Doc. 82-3 at 4).  Defendants also

agreed to produce examples of a "Rental Estimate" and a "Rental Quote" form, but reserved the

right to supplement the production if additional documents are identified. (R. Doc. 82-4 at 5).

In light of defense counsel's representation at oral argument that that Defendants have

produced all responsive documents, Plaintiff withdraws its motion with regard to this document

request. (R. Doc. 98 at 4).  Given the foregoing, the instant request is moot.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED as moot** with respect to

Request for Production No. 4.

### 5.    Request for Production No. 7

Plaintiff's Request for Production No. 7 seeks production of "a directory or other list

showing every document which is stored on, or accessible through, SharePoint, servers, or your

intranet." (R. Doc. 82-2 at 4).  Defendants raised various objections, including overbreadth and

undue burden, without producing any documents. (R. Doc. 82-3 at 5).

Plaintiff represents that it agreed to withdraw this request if Defendants would produce a corporate representative to be deposed on this topic, but Defendants refused to provide such a designee. (R. Doc. 82-1 at 7-8). Defendants argue that the production of the requested listing is impossible, given that they have "over 100 file servers, 85 physical locations, tens of thousands of folders, and hundreds of thousands of files with no way to aggregate a list across the entire landscape." (R. Doc. 84 at 6). Defendants also represent that they have designated a corporate representative regarding their computer systems and programs, and that "Plaintiff has agreed to withdraw this Request." (R. Doc. 84 at 6).

It appears that Plaintiff attempts to resurrect this request in its supplemental brief, in which it argues that Defendants' deposition testimony confirms that they maintain an "intranet" and that responsive information should be produced from this intranet. (R. Doc. 98 at 4). Plaintiff makes no showing that an accounting of all information within Defendants' "intranet" falls within the scope of discoverable information. The Court will not entertain such overly broad "discovery about discovery." This Request for Production itself has nothing to do with the claims or defenses of the parties.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 7.

### 6. Request for Production No. 8

Plaintiff's Request for Production No. 8 seeks production of "documents identifying each 'key' or national account customer which entered into a one-off or bilaterally negotiated contract." (R. Doc. 82-2 at 4). Subject to certain objections, Defendants identified 136 Select and Advantage accounts. (R. Doc. 82-3 at 5). In their supplemental response, Defendants stated the following:

> H&E will produce a spreadsheet listing all Select and Advantage accounts by Customer Number. Additionally, H&E supplements its prior response as follows. Rental contracts are created in H&E's computer system, ROC/RentalResult, based on the rental terms input at the branch. These terms are routinely negotiated by the customer and H&E personnel. Once these terms are agreed upon by the parties, H&E's practice is to print the contract created in ROC/RentalResult on pre-printed contract forms setting forth H&E's standard Terms & Conditions (previously produced). However, there are instances where the customer will issue its own contract or Purchase Order in addition to, or instead of, H&E's standard Terms & Conditions. There are also instances where the customer negotiates contract terms that are different from those set forth in H&E's standard Terms & Conditions.

(R. Doc. 82-4 at 7).

Plaintiff asserts that it is seeking the names of these "key" or "national account" customers on the basis that they are not similarly situated to Plaintiff because they specifically negotiated their fee agreements. (R. Doc. 82-1 at 8). Defendants represent that they have produced a listing of customers who have been classified as having "Select" or "advantage" accounts, which "permit customers to have nationwide accounts in order to streamline service across all branches." (R. Doc. 84 at 7). Defendants further represent that these are not the only customers who have "bilaterally negotiated contracts," and that there is no way to determine which additional customers entered into such contracts without an individualized inquiry into the individual accounts and dealings with Defendants. (R. Doc. 84 at 7).

Given that only 136 Select and Advantage accounts have been identified, the Court will require Defendants (1) to identify the customers with Select and Advantage accounts that fall within the geographical and temporal limits of the proposed class and (2) to identify which of these customers entered into a one-off or bilaterally negotiated contract.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED** with respect to Request for Production No. 8. Defendants must identify the Select and Advantage accounts as described above within **14 days** of the date of this Order.

### 7. Requests for Production Nos. 9 and 10

Plaintiff states that Request for Production No. 10 "is another way of asking for documents responsive to" Request for Production No. 9. (R. Doc. 82-1 at 9). Accordingly, the Court considers the two document requests together.

Plaintiff's Request for Production No. 9 seeks production of "a copy of Defendants' monthly financial statements (e.g. general ledger or income statements) that reflect any revenue from the Fees and any Related Costs." (R. Doc. 82-2 at 4). Subject to certain objections, Defendants agreed to produce "documents reflecting customers, by customer number only, who have been charged LDW and Environmental Charges during the period from 2009 through 2016." (R. Doc. 82-3 at 4, 6). In their supplemental response, Defendants stated that subject to the entry of a protective order, they would "produce Year-End Consolidated Trial Balances and Consolidated Income Statements for the years 2010-2016." (R. Doc. 82-4 at 7).

Plaintiff's Request for Production No. 10 seeks production of "all documents showing the expenses Defendants incurred and that the Environmental Charge was intended to offset." (R. Doc. 82-2 at 4). Subject to certain objections, Defendants agreed to "produce business records reflecting expenses incurred" coded to certain general ledger codes. (R. Doc. 82-3 at 6). In their supplemental responses, Defendants stated that subject to the entry of a protective order, they would "produce Year-End Consolidated Trial Balances and Consolidated Income Statements for the years 2010-2016." (R. Doc. 82-4 at 8). Defendants also stated that they would "produce documents reflecting expenses incurred relative to the construction of wash bays that collect environmental waste for disposals," further noting that "not all expenses incurred by it are booked to dedicated [General Ledger] Codes." (R. Doc. 82-4 at 8).

Plaintiff asserts that the documents provided by Defendants "are tangentially responsive but they are general, overall, consolidated statements of operation that do not provide the requested information." (R. Doc. 82-1 at 9). Plaintiff further asserts that Defendants have produced documents showing that they separately track their "Environmental Revenue" in their accounts receivable. (R. Doc. 82-1 at 9).[3] In opposition, Defendants assert that they have fully complied with the document requests because (1) revenue for Loss Damage Waivers and Environmental Charges are coded at the time of billing, (2) they have produced a spreadsheet showing every single general ledger entry for these items from 2010 to 2016, and (3) they have produced income statements and balance sheets reflecting all items of revenue and expense during the proposed class period. (R. Doc. 84 at 7).

In its supplemental brief, Plaintiff represents that the spreadsheet provides "customer level data for three states" but not the "consolidated revenue numbers that appear in the general ledger accounts." (R. Doc. 98 at 6). Plaintiff further complains that the income statements and balance sheets, in addition to being annual rather than monthly statements, are "macro-level income statements" that do not contain revenue numbers for the account and subaccounts specifically related to the fees and costs at issue. (R. Doc. 98 at 6).

Defendants have not produced any "monthly financial statements" as sought by Request for Production No. 9. Defense counsel has informed the Court that despite a representation that detailed GL spreadsheets were produced for the two GL codes at issue, only the totals were produced as part of the consolidated financial statements. (R. Doc. 97 at 4 n.7). Given that Defendants have produced "Year-End Consolidated Trial Balances and Consolidated Income

---

[3] Plaintiff states it did not provide a copy of these documents because they have been marked confidential. (R. Doc. 82-1 at 9 n.1).

Statements for the years 2010-2016," the Court finds no basis for withholding any monthly financial statements for the same time period to the extent such statements exist.

Defendants' response to Plaintiff's Request for Production No. 10 is also insufficient. To the extent Defendants separately track their "Environmental Revenue" in their accounts receivable as suggested by Plaintiff, then Defendants must produce responsive documents identifying such environmental revenue, as well as the specific environmental expenses such revenue was intended to offset.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED IN PART and DENIED IN PART** with respect to Request for Production Nos. 9 and 10. Defendants must provide the information detailed above within **14 days** of the date of this Order.

### 8.     Request for Production No. 13

Plaintiff's Request for Production No. 13 seeks production of "all documents related to whether or not the LDW is actually insurance as the Terms and Conditions state it is – 'PDW IS LEASED EQUIPMENT LOSS/DAMAGE INSURANCE ONLY.'" (R. Doc. 82-2 at 4-5). Subject to various objections, including relevance, Defendants stated they would "produce documents related to EPG Insurance, Inc." (R. Doc. 82-3 at 7).

Plaintiff argues, with little explanation, that Defendants have not provided all responsive documents. (R. Doc. 82-1 at 9-10). Notwithstanding any language that might appear in the agreements, Defendants state that "LDW is not insurance." (R. Doc. 84 at 7). Defendants further state that they produced 26,501 pages of documents after running the proposed searches from Plaintiff. (R. Doc. 84 at 7). Plaintiff clarified at oral argument that the search terms concerned various document requests. Having reviewed the search terms provided by Plaintiff (R. Doc. 82-6 at 4), the Court concludes that Defendants have sufficiently responded to this request.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 13.

### 9.     Request for Production No. 14

Plaintiff's Request for Production No. 14 seeks production of "all documents showing Defendants' requirement that putative class members make loss claims on their personal insurance prior to utilizing the LDW." (R. Doc. 82-2 at 5).  Defendants objected to the request on the basis that it "implies that H&E requires that its customers who have purchased Loss Damage Waiver make loss claims using their own insurance prior to utilizing LDW, which it does not." (R. Doc. 82-3 at 7).

Plaintiff argues that this response leaves it "guessing" and seeks an order directing Defendants "to produce responsive documents if they exist or to certify that they do not exist." (R. Doc. 82-1 at 10).  In response, Defendants represent that they "[know] of no documents responsive to this request." (R. Doc. 84 at 8).  Given Defendants' representation, the Court will not require any further response.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 14.

### 10.     Request for Production No. 15

Plaintiff's Request for Production No. 15 seeks production of "all documents showing payments made by or on behalf of Defendants for claims made by members of the putative classes for a loss under the LDW." (R. Doc. 82-2 at 5).  Subject to certain objections, Defendants stated that they would "produce documents reflecting payments made for lost or damaged equipment pursuant to the LDW program." (R. Doc. 82-3 at 7).

In support of its motion, Plaintiff does not explain how and to what extent the foregoing response is insufficient. (R. Doc. 82-1 at 10). Defendants represent that they have "already produced documents responsive to this request." (R. Doc. 84 at 8). Given the foregoing, the Court will require Defendants to certify, after conducting a reasonable search, that they have produced all non-privileged responsive documents located in their possession, custody, or control. Otherwise, Defendants shall produce the documents.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED** with respect to Request for Production No. 15. Defendants must provide the information detailed above within **14 days** of the date of this Order.

### 11.     Request for Production No. 17

Plaintiff's Request for Production No. 17 seeks production of "all documents relating to the method of calculation of the Fees, to include any schedules or charts used to arrive at the amount of the Fees." (R. Doc. 82-2 at 5). Subject to certain objections, Defendants stated that they would "produce [their] Rental Department Policies and Procedure Manual." (R. Doc. 82-3 at 6, 8).

Plaintiff argues, with little explanation, that Defendants have not provided all responsive documents. (R. Doc. 82-1 at 11). Defendants represent that they have "already produced documents responsive to this request," noting that the documents produced indicate that the Environmental Charge is made as either a flat or percentage fee, and that the Loss Damage Waivers are generally charged at 15% of the rental charge. (R. Doc. 84 at 8). While Defendants state that after a reasonable search they have not located any additional documents showing how these methods were selected, they do not provide an unequivocal representation that all responsive documents have been produced. Accordingly, the Court will require Defendants to

certify that, after conducting a reasonable search, they have produced all non-privileged

responsive documents located in their possession, custody, or control.  Otherwise, Defendants

shall produce the documents.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED** with respect to

Request for Production No. 17.  Defendants must provide the information detailed above within

**14 days** of the date of this Order.

### 12.    Request for Production No. 19

Plaintiff's Request for Production No. 19 seeks production of "all documents sent to third

parties which include information related to the payment of the Fees, including, but not limited

to, files sent to third parties which send invoices or to parties which receive or process payment."

(R. Doc. 82-2 at 5).  Subject to certain objections, including relevance, Defendants referred

Plaintiff to their responses to Requests for Production Nos. 1, 4, and 13. (R. Doc. 82-3 at 9).  In

their supplemental response, Defendants stated that "[d]uring the relevant time period, H&E

contracted with CCS to print and mail out invoices which were provided to CCS by H&E in pdf

form." (R. Doc. 82-4 at 11).

Plaintiff argues that it believes that third parties acting on behalf of Defendants

"requested payment for Fees, handled responses to putative class members about the Fees, and

allocated income from the Fees." (R. Doc. 82-1 at 11).  Defendants represent that Plaintiff is

mistaken, providing the following statement from their corporate credit manager: "H&E uses a

third-party vendor to print and mail its invoices.  The invoices are transmitted to the vendor (as

PDF files) who merely prints them out and mails them.  The vendor has no involvement in the

creation of the invoices, and does not field customer inquiries regarding the invoices." (R. Doc.

84 at 9; R. Doc. 84-2 at 1).  Based on the foregoing representation, the Court concludes that Defendants have satisfactorily responded to this request.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 19.

### 13.     Request for Production No. 20

Plaintiff's Request for Production No. 20 seeks production of "screenshots of all statements on Defendants' websites relating to the Fees or Related Costs from 2004 to the present." (R. Doc. 82-2 at 5).  Subject to certain objections, Defendants noted "that this information is publicly and readily available from internet resources." (R. Doc. 82-3 at 9).  In a supplemental response, Defendants stated that they have "not located any responsive documents after a reasonable search." (R. Doc. 82-4 at 12).

Plaintiff acknowledges that Defendants have asserted that they do not "maintain archived pages of its website." (R. Doc. 82-1 at 12).  Plaintiff is now seeking production of screenshots from Defendants' current website, which Defendants have represented have responsive information. (R. Doc. 82-1 at 12).  Defendants argue that they do not have a duty to produce publicly available information that Plaintiff can access and print for itself.

Information on Defendants' publicly available website constitutes electronically stored information obtainable pursuant to Rule 34(a)(1)(A), and such information is within Defendants' possession, custody, or control.  Accordingly, Defendants' objections to this request, including relevance and public availability, are overruled.

At oral argument, defense counsel represented that Defendants' Director of Marketing verified that Defendants' websites do not contain any information responsive to Plaintiff's

Request for Production No. 20.   The Court provided Plaintiff's counsel additional time to verify whether Plaintiff has located any responsive information on Defendants' websites, and for Defendants to file into the record a certification of their efforts to search for responsive information on their websites. (R. Doc. 96).

Plaintiff's counsel provided defense counsel with results for searches of "site:he-equipment.com environmental /s fee" and "site:he-equipment.com 'loss damage waiver'" using the Google search engine.  (R. Doc. 97-3).  Defense counsel certifies that in addition to personally searching Defendants' website, Paul Stevens, the Vice President of Sales and Marking, advised that Defendants' current website "went live" in December of 2015, and Defendants have "not published anything on the site regarding LDW or Environmental charges from December 2015 to the present." (R. Doc. 97 at 5).  Furthermore, Defendants assert that "[b]ecause the only references identified by Plaintiff were in [Defendants'] publicly available SEC filings, [Defendants do] not believe any supplementation is necessary." (R. Doc. 97 at 5).

The Court has reviewed the search results provided by Plaintiff.  Defendants are correct that, to the extent Plaintiff's searches identified responsive information, the information was located within publicly available SEC filings contained within Defendants' websites. Considering that such information is publicly available outside of Defendants' websites, the Court will not require Defendants to provide any SEC filings in response to the instant discovery request.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 20.

### 14. Request for Production No. 21

Plaintiff's Request for Production No. 21 seeks production of "all documents and declarations [Defendants] intend to rely upon to defeat Plaintiff's Motion for Class Certification, including any and all documents and declarations that you expect to introduce at the class certification hearing." (R. Doc. 82-2 at 5). Defendants objected to the request on the basis that it was premature, stating that they would "produce the documents that it intends to rely upon in accordance with the Court's scheduling order." (R. Doc. 82-3 at 9).

Plaintiff has not yet moved for class certification. Until Plaintiff files such a motion, Defendants are under no duty to separately identify documents that they expect to introduce at the class certification hearing. Defendants may identify such documents in response to any motion for class certification, or at a deadline set by district judge with regard to the class certification hearing. Of course, while Defendants need not identify any documents in response to this request, they remain under a continuing duty to supplement their initial disclosures and discovery responses, and must provide any supplemental discovery responses as discussed in the body of this Order.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 21.

### 15. Request for Production No. 23

Plaintiff's Request for Production No. 23 seeks production of "documents showing each management level employee who at any time had any responsibility for the Fees or Costs, including executive officers, including the position held by each and the dates that each position was held." (R. Doc. 82-2 at 6). Defendants objected to the request on various bases, including overbeadth and relevance. (R. Doc. 82-3 at 10).

Plaintiff argues that without a response to this request, it is unable to verify whether the custodians identified by Defendants as in response to Request for Production No. 2 are "the full and complete set of persons who have relevant information." (R. Doc. 82-1 at 13). Defendants represent that they do not have any responsive documents. (R. Doc. 84 at 10).

Given Defendants' representation, the Court concludes that Defendants have satisfactorily responded to the document request. To the extent Plaintiff has sought a list of the management level employees through an interrogatory, however, such information is discoverable.

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** with respect to Request for Production No. 23.

III.     **Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 82) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants must supplement their responses to Plaintiff's Request for Production Nos. 1, 8, 9, 10, 15, and 17, as detailed within the body of this Order, within **14 days** of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking to exceed the page limits and to strike the non-compliant supplemental brief (R. Doc. 100) is **DENIED as moot**.

Signed in Baton Rouge, Louisiana, on May 8, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**